UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RENE ISAACS, individually and as surviving and natural mother of MICHAEL MARTINDALE, an individual; and STEVEN B. MARTINDALE, an individual and surviving natural father of MICHAEL MARTINDALE,<br><br>       Plaintiff,<br><br>v.<br><br>WESTERN EXPRESS, INC.; and NORBERT SIEWERT,<br><br>       Defendants. | Case No. 1:23-cv-00475-AKB<br><br>**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT** |

Pending before the Court is Plaintiffs' Joint Motion for Partial Summary Judgment (Dkt. 35) and Defendants' Motion for Summary Judgment (Dkt. 56). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). The Court grants and denies both parties' summary judgment motions for the reasons discussed below.

## BACKGROUND

This case involves a death that occurred at a road construction project on Interstate-84 (I-84) near Eden, Idaho (Project). The Idaho Transportation Department (ITD) contracted with Wadsworth Brothers Construction Company, Inc., which in turn contracted with Road Work

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 1**

Ahead Traffic Services (RWA) to provide traffic control services related to the Project. The ITD approved the traffic control plan (TCP), which was intended to notify drivers of the Project and to direct traffic through the Project. RWA employed Michael Martindale as a traffic control supervisor.

On the evening of September 23, 2023, a tractor truck driven by Norbert Siewert struck and killed Martindale as he was working on the Project. Siewert's truck was equipped with a dash camera which captured video of the truck striking Martindale while he was on the road moving traffic control devices. Approximately nineteen seconds of that video is in the record. A review of the video shows that Siewert was driving into the setting sun; several traffic control devices were visible on or near the right lane; Siewert's truck struck two orange traffic control barrels before striking Martindale, who was behind the barrels; and then Siewert's truck struck Martindale's parked work vehicle before skidding off the road (Dkt. 39 at Ex. C).

Also in the record is a video taken sometime later in the evening after Siewert's truck struck and killed Martindale. It is approximately three minutes and shows traffic control devices repeatedly warning about the Project—beginning at least three miles in advance of the cross-over where the incident occurred, including notice that the right lane was closed ahead, and requiring merger into the left lane. Two eyewitnesses who traveled through the Project minutes before the incident, however, generally attest that several "construction cones" "had been hit and run over" by other vehicles (Dkt. 47-2 at ¶ 9; Dkt.47-3 at ¶ 9). Also, Siewert's dash camera video shows portions of traffic control devices strewn on the road before Siewert's truck strikes the barrels.

Martindale's parents, Plaintiffs Rene Isaacs and Steven Martindale, filed this wrongful death action against Siewert and his employer, Western Express, Inc. (Dkt. 18 at ¶¶ 3-5, 29, 33). The parties have filed cross-motions for summary judgment. Plaintiffs move for summary

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 2**

judgment, arguing that Western Express is jointly and severally liable for Siewert's conduct and that Siewert and Western Express are "strictly" liable for negligence per se and challenging Defendants' Fourth, Fifth, and Sixth affirmative defenses (Dkt. 35-1 at 2).

Defendants move for summary judgment on all Plaintiffs' claims, arguing that Western Express cannot be liable for independent negligence claims because it is vicariously liable for Siewert's conduct; Plaintiffs' negligence per se claims fail as a matter of law; and Plaintiffs' negligence claim fails because no reasonable jury could find that Siewert's negligence was greater than Martindale's negligence (Dkt. 56-2). Defendants also seek to preclude Plaintiffs from recovering damages for "grief and mental anguish" and to impose Idaho's noneconomic damages cap, Idaho Code § 6-1603 (Dkt. 56-2).

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477

U.S. at 250 (citation omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

At the summary judgment stage, the trial court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

When the parties submit cross-motions for summary judgment, the trial court must consider the merits of each motion separately and review the evidence submitted in support of each cross-motion. *See Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Even if both parties assert there are no contested issues of material fact, the court still has the responsibility to independently make that determination. *See id*. (citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)).

### ANALYSIS

**A.    Nature of Western Express's Liability**

Both parties raise arguments on summary judgment regarding the nature of Western Express's potential liability. Defendants admit that Western Express employed Siewert and that

MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 4

Siewert was acting within the course and scope of his employment at the time of the incident (Dkt. 47 at 2-3). Based on this admission, Western Express is vicariously liable for Siewert's tortious conduct under the doctrine of respondeat superior. That doctrine provides that an employer is responsible for the torts of its employee when those torts are committed within the scope of the employee's employment. *Rausch v. Pocatello Lumber Co., Inc.*, 14 P.3d 1074, 1077-78 (Idaho Ct. App. 2000); *see also Teurlings v. Larson*, 320 P.3d 1224, 1233 (Idaho 2014) ("Under the doctrine of respondeat superior, an employer is liable for the tortious conduct of an employee committed within the scope of employment.") (quotation omitted). As discussed below, Western Express's admission that it is vicariously liable for Siewert's conduct is dispositive of Plaintiffs' independent negligence claims against Western Express and their assertion that Western Express and Siewert are jointly and severally liable (Dkt. 35-1 at 4-5; Dkt. 56-2 at 4-6).

     1.      **Negligent Supervision and Entrustment Claims Against Western Express**

Plaintiffs allege that Western Express "negligently allowed Siewert to operate the tractor truck" and "negligently entrusted the tractor truck to Siewert" (Dkt. 18 at ¶ 36). Defendants construe this allegation as asserting negligent supervision and entrustment claims, and they argue that because Western Express has admitted vicarious liability for Siewert's conduct, they are entitled to summary judgment on Plaintiffs' independent negligence claims against Western Express (Dkt. 56-2 at 4-6).

In support, Defendants rely on *Wise v. Fiberglass Sys., Inc.*, 718 P.2d 1178 (Idaho 1986), in which the Idaho Supreme Court addressed the propriety of allowing a plaintiff to proceed against a party on independent negligence theories after that party "has admitted liability under the doctrine of *respondeat superior*." *Id* at 1181. In that case, Walker was driving a truck owned by his employer, Fiberglass System. *Id.* Walker was traveling slowly in the left lane of I-84 to retrieve

items that had fallen off the truck when Wise rear-ended Walker. *Id.* at 1180. Wise sued both Walker and Fiberglass Systems. *Id.* "At trial, Fiberglass Systems admitted full responsibility for any negligence attributable to Walker, under the doctrine of *respondeat superior*." *Id.* Regardless, Wise attempted to admit evidence at trial that "Fiberglass Systems was independently responsible for the accident due to negligent hiring and training of Walker and negligent entrustment of the truck to Walker." *Id.* Wise appealed the district court's "refus[al] to let him present evidence on his theories [regarding] Fiberglass Systems' independent negligence." *Id.* at 1181.

The *Wise* Court held that the district court did not err by refusing to allow Wise to pursue his independent negligence theories against Fiberglass Systems once it "admitted liability under the doctrine of *respondeat superior*." *Id.* The Court's rationale was that it would be a waste of time and judicial resources to allow Wise to proceed independently against Fiberglass Systems because the same result would occur; no additional liability on behalf of Fiberglass Systems would result; and the jury's attention would be distracted from the contested issue. *Id.* at 1181-82; *see also Kucirek for Estate & Heirs of Grossklaus v. Jared*, No. 3:17-CV-00028-CWD, 2018 WL 4224847, at *8 (D. Idaho Sept. 5, 2018) (ruling that because employer admitted liability under respondeat superior, plaintiff was prohibited from pursuing independent negligence claims against employer). The Court noted only two exceptions to its holding—if a plaintiff was seeking punitive damages or if a defect in the entrusted vehicle caused the accident. *Wise*, 718 P.2d at 1181-82; *Al-Kindi v. Edwards Bros.*, *Inc.,* No. CV03-459-E-LMB, 2005 WL 8165290, at *7-8 (D. Idaho Feb. 11, 2005) (citing *Wise* as majority rule and applying that rule).

In this case, the Court agrees with Defendants that Western Express's admission of vicarious liability forecloses Plaintiffs' independent negligence claims against Western Express. As in *Wise*, Western Express has admitted it is vicariously liable for Siewert's conduct; there is no

evidence a defect caused the incident; and Plaintiffs are not seeking punitive damages. Accordingly, under *Wise*, Defendants are entitled to summary judgment on Plaintiffs' claims against Western Express for negligent supervision and entrustment.

The Court is not persuaded by Plaintiffs' attempt to distinguish *Wise*. Plaintiffs argue that the rule in *Wise* is inapplicable because Defendants have only "admitted *potential* vicarious liability" for Siewert's conduct versus "actual liability" (Dkt. 58 at 2) (emphasis added). Western Express, however, has not limited its admission to any potentiality; rather, it has conclusively admitted liability for Siewert's conduct.

Plaintiffs' suggestion that Western Express's admission of vicarious liability does not preclude independent negligence claims against Western Express until after a jury concludes Siewert is, indeed, negligent, not consistent with *Wise.* As noted above, in *Wise*, Fiberglass Systems admitted it was vicariously liable; the case proceeded to trial to determine Walker's negligence; and the district court (which was affirmed) refused to allow Wise to present evidence of alternative negligence theories against Fiberglass Systems. In other words, the Court concluded that Fiberglass Systems' admission of vicarious liability before the jury's verdict was sufficient to preclude independent negligence claims against Fiberglass Systems.

Like Fiberglass Systems in *Wise*, Western Express has unequivocally admitted it is vicariously liable for Siewert's conduct. This pretrial admission is sufficient to preclude Plaintiffs' independent negligence claims against Western Express. The rationale remains the same regardless of whether the admission occurs at trial as in *Wise* or pretrial as here—any additional independent negligence claims against Western Express will not result in a different outcome regarding its liability.

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 7**

That Plaintiffs have purportedly "proffered" that "Western Express's actions were reckless" does not change this conclusion either (Dkt. 58 at 2). Plaintiffs have not cited any information in the record to support this proffer (*see id.*); *see also Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (noting court not required to search record for support). Further, Plaintiffs have not alleged Western Express was reckless (*see generally* Dkt. 18). Regardless, Plaintiffs cite no authority for the proposition that recklessness is an exception to the rule that a plaintiff may not assert independent negligence theories against a defendant which has already admitted vicarious liability.

Further, Plaintiffs' reliance on an Ada County district court case, *Carraway v. Chamacho-Montoya, et al.*, Case No. CV01-21-8339 (Feb. 5, 2023), is misplaced. Although the defendants in that case conceded liability before summary judgment, the *Carraway* court did not and could not limit the ruling in *Wise* to instances in which an employer conceded the *employee's* liability for negligence. Accordingly, the Court grants Defendants' summary judgment motion on Plaintiffs' claims of negligent supervision and entrustment against Western Express.

### 2.    Defendants' Joint and Several Liability

Based on Western Express's admission to vicarious liability for Siewert's conduct, Plaintiffs seek a ruling that Defendants are jointly and severally liable under Idaho Code § 6-803(5) (Dkt. 35-1 at 3-4). Defendants do not dispute Western Express's vicarious liability. They dispute, however, that they are jointly and severally liable under § 6-803(5).

Section 6-803(5) provides, in relevant part, that "a party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party . . . *when a person was acting as an agent or servant of another party*. . . ." I.C. § 6-803(5) (emphasis added). The Idaho Court of Appeals has ruled that § 6-803(5) "preserves the common

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 8**

law doctrine of joint and several liability with respect to an employer's *respondeat superior* liability." *Rausch*, 14 P.3d at 1082. In other words, vicarious liability under the doctrine of respondeat superior is a form of joint and several liability which § 6-803(5) addresses.

Because § 6-803(5) preserves joint and several liability under the respondeat superior doctrine and Western Express admits it is vicariously liable under that doctrine, it is axiomatic that § 6-803(5) applies in this case. Under § 6-803(5), if the jury concludes Siewert is negligent and owes damages, then Western Express will be jointly and severally liable for those damages. Although Defendants assert that Siewert should not be held jointly and severally liable for any damages awarded against Western Express for negligent entrustment, that is not a concern because Plaintiffs cannot assert that claim, as discussed above.

The Court also notes that Plaintiffs' purpose in seeking a ruling on joint and several liability appears to extend beyond the scope of summary judgment. They argue that because Defendants are jointly and severally liable, they "should be referred to jointly throughout the *Special Verdict Form*" at trial (Dkt. 35-1 at 4). Defendants respond that referring to them jointly on the verdict form would prevent the jury from comparing Siewert's and Martindale's fault (Dkt. 47 at 4).

The Court agrees that conflating Defendants on the verdict form or otherwise would likely confuse the jury. Rather than referring to Defendants jointly, the Court anticipates instructing the jury that Western Express is Siewert's employer and that as his employer, it is liable for his conduct within the scope of his employment. To apportion fault, the jury would then consider Siewert's conduct, and Western Express would be jointly and several liable for any damages resulting from that conduct. The Court, of course, will not conclusively determine the content of the final jury instructions and the verdict form until the case has rested. Nonetheless, based on the present record,

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 9**

Western Express will not likely be identified on the special verdict form as a party whose conduct the jury must consider for apportionment purposes.

**B.      Negligence Per Se**

Plaintiffs also argue that "Defendants are strictly liable for negligence per se" (Dkt. 35-1 at 5). This argument misconstrues strict liability and negligence per se, which are two separate theories of recovery.[1] *Toner v. Lederle Labs.*, 732 P.2d 297, 303 n.5 (Idaho 1987). Regardless, the Court liberally construes Plaintiffs' argument as seeking summary judgment on the two elements of their negligence claim—duty and breach—under the theory of negligence per se.

Under Idaho law, a court may adopt the requirements of a legislative enactment or an administrative regulation as the standard of conduct of a reasonable man. *O'Guin v. Bingham Cnty.*, 122 P.3d 308, 311 (Idaho 2005). Such authorities may define the applicable standard of care owed, and a violation of a statute or regulation may constitute negligence per se. *Id*. Establishing negligence per se through a violation, however, only conclusively establishes the first two elements of a negligence cause of action. *Id.* In other words, "[n]egligence *per se* lessens the plaintiff's burden only on the issue of the 'actor's departure from the standard of conduct required of a reasonable man" because "the elements of duty and breach are taken away from the jury." *Id.* (quotation omitted). The factual determination of proximate cause, however, is generally reserved for the trier of fact. *Ahles v. Tabor*, 34 P.3d 1076, 1078 (Idaho 2001), *abrogated by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 265 P.3d 502 (Idaho 2011).

Negligence per se does not create a cause of action separate from negligence. Rather, "[n]egligence *per se* is simply one manner of proving a common law negligence claim" by

---

[1]      Plaintiffs' reliance on *State v. Taylor*, 80 P.3d 338 (Idaho Ct. App. 2003), is misplaced. That case notes strict liability in criminal law refers to a criminal statute without a mens rea requirement. *Taylor* has no application in the civil context.

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 10**

replacing the common law ordinary duty of care with a statutory or regulatory duty of care. *Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 172 P.3d 1123, 1128 (Idaho 2007). To replace the common law duty, a statute or regulation must meet the following elements: (1) it must clearly define the required standard of conduct; (2) it must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury. *Ahles,* 34 P.3d at 1078.

Generally, Idaho courts have held that violation of motor vehicle safety statutes, which establish the rules of the road, may constitute negligence per se. *Id.* (listing examples). Sometimes, the legislature sets forth a standard in public safety statute that "supplants the reasonable person standard encompassed in the concept of ordinary negligence." *Id.* The complexity of a statute, however, may show that the statutory standard of conduct is "less than clear and not easily ascertained or applied" *Id.* at 1079. In that event, an alleged violation of the statute cannot be negligence per se. *Id.* (concluding statute providing limited circumstances under which driver may pass vehicle on the right was too complex to establish standard of conduct for negligence per se analysis).

In their complaint, Plaintiffs allege Siewert was negligent per se under various rules of the road, including Idaho Code §§ 49-615, 49-616, and 49-643(1) (Dkt. 18 at ¶¶ 18-23). In their summary judgment briefing, Plaintiffs identify numerous additional statutes and a federal regulation under which they claim they are entitled to summary judgment. These additional authorities include Idaho Code §§ 49-624(1), 49-637(3), 49-654(1), and 49 C.F.R. § 392.14 (Dkt. 49 at 4-5; Dkt. 58 at 4-9). Defendants argue that Plaintiffs should not be allowed to assert negligence per se based on statutes that they did not allege in their complaint (Dkt. 61 at 3-4).

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 11**

The Idaho Supreme Court, however, has held that "a party is not required to specifically plead negligence per se in their complaint when alleging a cause of action for ordinary negligence." *Obendorf v. Terra Hug Spray Co.*, 188 P.3d 834, 840-41 (Idaho 2008). Further, a court in this District has ruled that plaintiffs do not need to specifically cite a statute upon which they rely for negligence per se, although they must allege facts supporting their claim. *Read v. Teton Springs Golf & Casting Club, LLC*, No. CV08-099-E-EJL-REB, 2010 WL 11531377, at *6 (D. Idaho Sept. 28, 2010). Unfortunately, these authorities appear to allow (or at least do not preclude) Plaintiffs' scattershot, post-pleading method of identifying statutes which Siewert purportedly violated. Accordingly, the Court addresses each provision to determine whether any meets all the elements necessary to support the application of negligence per se. *See Ahles,* 34 P.3d at 1078 (identifying four elements).

### 1.    Idaho Code § 49-643

Section 49-643 cannot establish negligence per se. That statute requires a driver to "yield the right-of-way" to any "pedestrian actually engaged in work upon a highway within any highway construction . . . area indicated by traffic-control devices." I.C. § 49-643(1). As Defendants note, however, § 49-119 defines "right-of-way" and provides that "failure to yield right-of-way shall not be construed as negligence per se or as prima facie evidence of negligence." I.C. § 49-119(18). Plaintiffs concede that this latter provision precludes their reliance on § 49-643 to establish negligence per se (Dkt. 58 at 3 n.3).

### 2.    Idaho Code §§ 49-615 and 49-654

Sections §§ 49-615 and § 49-654 cannot establish negligence per se either. Section 49-615 requires a driver to "exercise due care" to avoid colliding with pedestrians, and § 49-654 provides a driver shall not drive at "a speed greater than is reasonable and prudent under the conditions and

having regard to the actual and potential hazards then existing." I.C. § 49-654(1). Neither of these statutes appears to adopt a standard of care different from the common law duty of ordinary care. Idaho courts have described that common law duty by using the same terminology used in the statutes which Plaintiffs cite—reasonable, prudent, and "due care." *See, e.g.*, *Oswald v. Costco Wholesale Corp.*, 473 P.3d 809, 824 (Idaho 2020) (noting duty to exercise ordinary care raises core negligence question of whether party exercised reasonable care); *Pittman v. Sather*, 188 P.2d 600, 605 (Idaho 1947) (describing duty to exercise due care as that which person of ordinary care and prudence would exercise). Plaintiffs have not cited any authority, and this Court is not aware of any, providing that a court may resolve the issues of duty and breach under negligence per se as a matter of law when the statute at issue simply adopts a standard akin to the ordinary standard of care under common law. Absent such authority, the Court declines to usurp the jury's role in determining whether Defendants breached a duty of ordinary care.

### 3.      Idaho Code § 49-624

Section 49-624 cannot establish negligence per se under the facts in this case. That statute requires a driver to change lanes if traveling in a lane adjacent to a "stationary police vehicle, authorized emergency vehicle, stationary tow truck, or highway incident response vehicle, if such vehicle is displaying flashing lights." I.C. § 49-624(1). Here, Plaintiffs repeatedly describe Martindale's truck as a "work truck" which Siewert crashed into while the vehicle's lights were flashing (Dkt. 35-2 at ¶ 31; Dkt. 49 at 9; Dkt. 60 at 4, 9) (describing vehicle as "work truck"). Defendants argue that § 49-624 is inapplicable because Martindale's vehicle was not one which the statute describes (Dkt. 47 at 22). Plaintiffs do not respond to this argument directly. Instead, they disingenuously dodge the issue by simply asserting that "[§] 49-624 applies when a driver approaches a 'stationary . . . vehicle displaying flashing lights'" (Dkt. 58 at 8). In other words, they

use ellipses to delete the statute's limited application to specifically described categories of vehicles. Martindale's work truck is not within any of those categories, however, so § 49-624 is inapplicable.

### 4.    Idaho Code § 49-616

Section 49-616 also cannot establish negligence per se under the facts of this case. That statute prohibits driving "through or within a safety zone." I.C. § 49-616. Section 49-120 defines "safety zone" to mean "the area or space officially set apart within a highway for the exclusive use of pedestrians and which is protected or is so marked or indicated by adequate signs as to be plainly visible at all times while set apart as a safety zone." I.C. § 49-120(3). Meanwhile, the Idaho Code separately defines "work zone" to mean "a construction or maintenance area that is located on or adjacent to a highway and marked by appropriate warning signs." I.C. § 49-124(3).

Here, Plaintiffs repeatedly describe Martindale as being within a "work zone" (Dkt. 35-1 at 2, 6, 7; Dkt. 35-2 at 8; Dkt. 49 at 3; Dkt. 58 at 6; Dkt. 60 at 3, 5, 8). Indeed, Plaintiffs refer to the zone as a safety zone only once, but in support, they cite deposition testimony specifically referring to the area as a work zone, not a safety zone (Dkt. 60 at 3) (referring to "*designated* construction safety zone" but citing deposition testimony that Martindale was in "closed lane of work zone"). Plaintiffs cite no authority and make no argument that a work zone and a safety zone are the same thing under Idaho law. That the legislature defines them separately indicates they are different.

Moreover, the definition of work zone more appropriately applies to the area in which Martindale was working. Because Plaintiffs cannot fairly dispute Martindale was in a work zone based on this record, the Court concludes that Martindale is not a member of the class of persons who § 49-616 was designed to protect, i.e., pedestrians in a safety zone, so § 49-616 cannot apply

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 14**

to establish negligence per se. *See Ahles*, 34 P.3d at 1078 (requiring plaintiff must be member of the class of persons the statute was designed to protect).

### 5.   Idaho Code § 49-637

Section 49-637, likewise, cannot establish negligence per se under the facts of this case. That statute provides that a driver must obey all "traffic-control devices . . . directing specified traffic to use a designated lane." I.C. § 49-637(3); *see also id.* at § 49-637(1), (4). Plaintiffs' argument regarding § 49-637 is that the undisputed facts show Siewert impacted Martindale "inside a closed construction lane"; traffic-control devices designated that lane as closed; and Siewert nevertheless drove through the devices (Dkt. 58 at 4). As Defendants note, however, there is evidence showing that the traffic-control devices designating the lane of travel may not have been properly placed. As one witness attests, "[t]here were a bunch of construction cones on the highway that had been hit and run over by another vehicle or vehicles" (*See, e.g.*, Dkt. 47-2 at ¶ 9). For this reason, the location of the traffic-control devices is disputed. Because there is a factual dispute whether the traffic-control devices designated a lane of travel, the Court cannot rule as a matter of law that Siewert violated § 49-637 by not following that designated lane. Accordingly, the Court declines to apply § 49-637 for purposes of negligence per se.

### 6.   49 C.F.R. § 392.14

Finally, 49 C.F.R. § 392.14 cannot establish negligence per se on summary judgment. This federal regulation provides that "extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction." Although Defendants argue that this federal regulation cannot, as a matter of law be a basis for a state law duty (Dkt. 61 at 4 n.4), the

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 15**

Idaho State Police Commercial Vehicle Safety Rules [2] adopt 49 C.F.R. Part 392. IDAPA 11.13.01.019.01.b. For this reason, the regulation is arguably a state law duty.

Regardless, the Court declines to conclude Siewert was negligent per se for violating § 392.14. *Ahles*, 34 P.3d at 1078 (requiring statute clearly define standard of care). "Extreme caution" is a heightened duty of ordinary care, the degree of which will necessarily turn on the nature and degree of the hazard at issue. These issues are not matters which the Court can resolve as a matter of law. Rather, they involve disputed factual issues which are more appropriately resolved by the jury. Although § 392.14 may establish Siewert's duty of care here, the parties do not address that issue on summary judgment so the Court does not definitely resolve it at this time. In summary, the Court declines to grant Plaintiffs' summary judgment motion on their negligence per se theories under the identified authorities. Regardless, Plaintiffs' negligence claim against Siewert remains viable.

## C.      **Affirmative Defenses**

Plaintiffs move for summary judgment on Defendants' Fourth, Fifth, and Sixth affirmative defenses (Dkt. 35-1 at 8). These defenses address causation issues. Taken together, they allege that (1) an intervening, superseding event caused Plaintiffs' damages (Fourth Defense); (2) either Martindale, RWA, or both caused Plaintiffs' damages (Fifth Defense); and (3) the conduct of a nonparty or nonparties caused Plaintiffs' damages (Sixth Defense) (Dkt. 22 at 3). These latter two defenses implicated the theory of comparative negligence.

---

[2]      The Court takes judicial notice of the Idaho State Police Commercial Vehicle Safety Rules under Rule 201 of the Federal Rules of Evidence. These Safety Rules are not subject to reasonable dispute because they are within the court's territorial jurisdiction and can be accurately and readily determined in the public record. *See* Fed. R. Civ. P. 201(b)(1), (2); (c)(1).

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 16**

Although Plaintiffs moved for summary judgment on these affirmative defenses, they challenge them under a pleading standard. Specifically, Plaintiffs argue that Defendants have failed to adequately allege the defenses under Rule 8 of the Federal Rules of Civil Procedure. Rule 8 provides that a defendant must "state in short and plain terms its defenses." Fed. R. Civ. P. 8(b)(1)(A). Meanwhile, Defendants construe Plaintiffs' challenge to their affirmative defenses as a motion under Rule 12(f) motion to strike[3] (Dkt. 47 at 8).

Both parties acknowledge that courts in the Ninth Circuit are divided on the standard applicable for determining whether a defendant has adequately pleaded an affirmative defense (Dkt. 35-1 at 9-10). Some courts have adopted the *Twombly*[4] plausibility standard for pleading affirmative defenses; meanwhile, other courts have applied a standard of "fair notice," which requires only describing an affirmative defense in general terms. *Johnson v. Engbaum*, No. 1:24-cv-00218-REP, 2024 WL 3696158, at *1 (D. Idaho Aug. 7, 2024) (citing cases); *see also* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1274 (4th ed. 2026) (noting Ninth Circuit has arguably implicitly rejected extending *Twombly* plausibility standard to pleading affirmative defenses by stating that "the 'fair notice' required by the pleading standards only requires describing the defense in general terms" (quoting *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015)).

Defendants here argue that "Plaintiffs were on *sufficient* notice of and [have] information about Defendants' Fourth, Fifth, and Sixth Defenses" (Dkt. 47 at 10) (emphasis added). "Sufficient" notice, however, is not one of the two pleading standards on which courts are divided and is arguably even less than fair notice. Regardless, the Court applies the most liberal pleading

---

[3]     Neither party explains why they propose a pleading standard rather than a summary judgment standard to address Defendants' affirmative defenses.

[4]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 17**

standard to address Plaintiffs' challenges and also considers Plaintiffs' challenges under the summary judgment standard.

### 1. Nonparty Fault of ITD

The Court concludes that Defendants failed to provide Plaintiffs fair notice that Defendants intend to assert ITD, a nonparty, was at fault for the incident. Nothing in Defendants' affirmative defenses indicates or even hints that Defendants intended to assert ITD's actions or omissions contributed to Martindale's death. Further, Defendants' assertion that their opposition to Plaintiffs' summary judgment motion somehow cures "any confusion or surprise" about their defense against ITD is unpersuasive (Dkt. 47 at 10).

In that opposition, Defendants argue that they intend to present evidence at trial that ITD failed to ensure the TCP conformed with the Manual on Uniform Traffic Control Devices and "other relevant guidance" and to provide "clear and positive guidance" to drivers (Dkt. 47 at 12). In support, they cite the declaration of their expert, Jason Bodart (*id.* at 13) (citing Dkt. 47-4. at ¶¶ 17-28). Bodart, however, opines that ITD approved the original TCP; RWA changed the TCP; and RWA's modifications and deviations from the TCP caused or contributed to Martindale's death (*see* Dkt. 47-4 at ¶¶ 15-28). Bodart offers no opinion that ITD was at fault, however.

Likewise, the declarations of the two witnesses who were following Siewert on I-84 when his truck struct Martindale do not support Defendants' contention that ITD was at fault (*see* Dkts. 47-2, 47-3). Nothing in those declarations attributes any fault to ITD nor are the declarants qualified to assign fault to ITD. Accordingly, Defendants have failed to establish a genuine issue of material fact that ITD is at fault, and the Court grants Plaintiffs' summary judgment motion on Defendants' affirmative defense that ITD, a nonparty, is at fault.

MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 18

### 2.    Intervening, Superseding Cause

The Court also concludes that Defendants failed to provide Plaintiffs fair notice that Martindale's "presence on the highway . . . was an intervening act and superseding cause" (Dkt. 47 at 10). Defendants' Fourth affirmative defense does not identify either the intervening act or the purported actor. Regardless, even assuming Defendants had adequately alleged the defense, they fail to establish a genuine issue of material factual that Martindale was a superseding cause of the incident.

A cause that might otherwise be an injury's proximate cause may not be a proximate cause if there is an intervening, superseding cause. *State v. Ochoa*, 505 P.3d 689, 699-700 (Idaho 2022). An intervening, superseding cause refers to an independent act or force that breaks the causal chain between the defendant's negligent act and the victim's injury. *Id.*; *see also Cramer v. Slater*, 204 P.3d 508, 517 (Idaho 2009) ("A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.") (cleaned up). In other words, the intervening, superseding cause becomes the proximate cause. *Ochoa*, 505 P.3d at 699-700; *see also Cramer*, 204 P.3d at 517 (identifying factors for determining intervening act is a superseding cause).

On summary judgment, Defendants argue that "Martindale's presence on the highway without carefully observing traffic is an unforeseeable intervening act that was a superseding cause" (Dkt. 47 at 11). In support, they rely on *Obray v. Glick*, 660 P.2d 44 (Idaho 1982). *Obray*, however, is distinguishable. In that case, Obray was waiting with a van stalled on the roadside for a tow truck. *Id.* at 45. A triangular reflector had been placed behind the van. *Id.* Officer Nelson arrived on the scene, noticed the reflector had been blown over, replaced it, and advised Obray to replace it if it blew over again. *Id.* After Officer Nelson left the scene, the reflector blew over, and

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 19**

Obray entered the lane of traffic to replace it, failed to observe an oncoming vehicle, and was struck by a motorist who did not see him despite an unobstructed roadway. *Id.* at 46. Obray sued both Officer Nelson and the motorist. *Id.* at 45.

On appeal from summary judgment for Officer Nelson, the Idaho Supreme Court in *Obray* ruled that "the intervening acts of Obray and [the motorist] were a superseding cause of Obray's injuries, thus relieving [Officer Nelson] of any and all liability." *Id* at 46. Contrary to Defendants' suggestion, the Court did not conclude that Obray's conduct was a superseding cause which excused *the motorist's* liability. For that reason, *Obray* is distinguishable from this case and does not stand for the proposition that, as a matter of law, a pedestrian who is struck by a vehicle after entering a lane of traffic is the superseding cause of his injury.

Further, the Court is not persuaded that Defendants' discovery responses either gave Plaintiffs notice that Martindale's conduct was a superseding cause or created a genuine issue of material fact for trial. Defendants describe those responses as indicating that: (1) "the accident scene was in disarray and traffic control devices were displaced at the time of the accident"; (2) "Martindale was in a very dangerous position at the time of the incident, in the middle of a thoroughfare that was in disarray"; and (3) "Martindale's dangerous position may be attributable to a lack of education or training by his employer" (Dkt. 47 at 10). While this information may suggest Martindale contributed to his death, it does create a genuine issue of material fact that Martindale's conduct was an alleged intervening act establishing a superseding cause. Accordingly, the Court grants Plaintiffs' summary judgment motion on Defendant's Fourth affirmative defense.

### 3.     Comparative Fault

Finally, both parties seek summary judgment on Defendants' comparative fault defense. Plaintiffs argue Martindale and RWA are not at fault as a matter of law (Dkt. 35-1 at 11) (arguing Plaintiffs are entitled to summary judgment as a matter of law regarding any allegation of comparative fault against Martindale and his employer, RWA). Meanwhile, Defendants argue that no reasonable jury could find Siewert's negligence was greater than Martindale's (Dkt. 56-2 at 10.

Idaho's comparative negligence statute is § 6-801. It eliminates contributory negligence as a defense. *Salinas v. Vierstra*, 695 P.2d 369, 373 (Idaho 1985). Under § 6-801, a jury allocates fault, and a defendant is only liable for his proportionate share of fault. Further, a jury may allocate fault among all parties and nonparties for whom there is admissible evidence of negligence. The Idaho Supreme Court has repeatedly held that a jury must consider the negligence of others—even if they are not a party to the lawsuit. *Vannoy v. Uniroyal Tire Co.*, 726 P.2d 648, 650 (Idaho 1985) ("[W]hen apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tortfeasors either by operation of law or because of a prior release."); *see also* Idaho Code § 6-802 (providing for special verdict to determine percentage of negligence or comparative responsibility attributable to each party). Under Idaho's statutory scheme, "a defendant who has been found liable to the plaintiff for a tort bears liability only for that defendant's proportionate share of the total damages." *Does I-XIX v. Boy Scouts of Am.*, 384 F. Supp. 3d 1257, 1260 (D. Idaho 2019).

Based on the record, the Court finds the parties are, or fairly should be, on notice that Siewert, Western Express, Martindale, and RWA may bear fault for Martindale's death. For example, Plaintiffs submit the report of Adam Grill, who is an expert in the trucking industry

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 21**

(Dkt. 59 at 5). Grill opines, among other things, that Western Express failed to adequately train Siewert and that Siewert was traveling at a speed too fast for conditions, deliberately decided to travel into the sun without protection from the glare, and was willful and reckless (Dkt. 59 at 31, 37). Meanwhile, Defendants submit the declaration of Jason Bodart, an expert in roadway design, and the declaration of Billie Cada, an expert in traffic safety (Dkt. 47-1; Dkt. 47-4). Cada opines that RWA failed to properly train and support Martindale and that Martindale failed to take due care to protect himself (Dkt. 47-1 at ¶¶ 11, 15, 18). Bodart opines, as noted above, that RWA altered the TCP from ITD's approved plan and that the modification placed Martindale in danger and caused or contributed to his death (Dkt. 47-4 at ¶¶ 17-28). These opinions create genuine issues of material fact whether the conduct of Martindale, RWA, Western Express, and Siewert contributed to Martindale's death and, if so, in what percentage.

The Court is not persuaded by Plaintiffs' arguments that neither Martindale nor RWA owed any duty to avoid Martindale's death or are otherwise absolved of their conduct. For example, Plaintiffs argue that Martindale and RWA did not have a legal duty for the design of the TCP; Martindale had an absolute right to assume Siewert would not violate the rules of the road; and there is no evidence that Martindale failed to exercise reasonable care (Dkt. 35-1 at 12-18). In response, Defendants assert, among other things, that RWA breached its legal duty by failing to train Martindale; failing to support him; allowing him to go alone to the site without a protection vehicle or a spotter; and making unsafe changes to the TCP (Dkt. 47 at 13; *see also id.* at 17-18). Further, Defendants assert that Martindale acted unreasonably by failing to call for help, choosing to be in a freeway lane without any additional signs, not watching for oncoming traffic, disregarding the setting sun's impact on oncoming drivers, and failing to follow safety training.

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 22**

Contrary to many of the parties' arguments, Siewert, Western Express, Martindale, and RWA each owed at least a duty to exercise reasonable care and prudence under the circumstances. Whether each actor breached that duty and whether that conduct contributed to Martindale's death raise genuine issues of material fact for the jury. Based on the record, the Court cannot determine as a matter of law that any actor was not comparatively at fault or the degree to which they were at fault.

Likewise, the Court rejects Defendants' argument that Siewert's conduct could not be more negligent than Martindale's as a matter of law (Dkt. 61 at 9). Defendants rely primarily on Siewert's dash camera video to assert that Martindale "did not appear to be paying close attention to oncoming traffic" or "attempt to avoid being struck by the oncoming semi-truck" (*id.* at 10). Contrary to Defendants' assertions, however, the video does not clearly show Martindale was more at fault than Siewert. Rather, genuine issues of material fact regarding the allocation of each actor's fault exist for trial. Accordingly, the Court denies both Plaintiffs' summary judgment motion on Defendants' defense of comparative fault and Defendants' summary judgment motion on Plaintiffs' negligence claim.

**D.       Negligent Infliction of Emotional Distress Claim**

Defendants argue that Plaintiffs are limited to damages for loss of future support from Martindale and "cannot recover under grief and mental anguish theories" (Dkt. 56 at 13). In support, Defendants cite Idaho's wrongful death statute, Idaho Code § 5-311. Section 5-311 creates a cause of action for the heirs of a decedent whose death was "caused by the wrongful act or neglect of another." Idaho Civil Jury Instruction (IDJI) 9.05 articulates the correct measure of damages in a wrongful death action.[5] *Rossman Law Group, PLLC v. Holcomb*, 579 P.3d 914, 923

---

[5]      IDJI 9.05 provides that the jury may consider the following elements of damage: "(1) the reasonable cost of the decedent's funeral; (2) the reasonable value of necessary medical care and

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 23**

(Idaho 2025) (citing IDJI 9.05 with approval). IDJI 9.05 also identifies damages that are not recoverable; specifically, it provides that because "death is inevitable," an heir may not recover damages for grief and sorrow.

Here, however, Plaintiffs have not sought damages for "grief and sorrow" (*see generally* Dkt. 18). They do allege, however, that Siewert's wrongful acts caused them extreme emotional distress manifesting in physical symptoms (Dkt. 18 at ¶¶ 28, 32). They argue that these allegations state a common law claim for negligent infliction of emotional distress in addition to their statutory wrongful death claim (Dkt. 58 at 13). In reply, Defendants argue that Plaintiffs cannot assert both claims and that doing so "would render the plain language of the wrongful death statute meaningless" (Dkt. 61 at 6).

Neither party cites any authority that a plaintiff may or may not simultaneously assert both claims.[6] Idaho courts have apparently not addressed the issue. No Idaho case expressly prohibits a plaintiff from asserting both claims. Rather, numerous cases indicate that plaintiffs regularly assert both claims. *See, e.g.*, *Cramer*, 204 P.3d at 512–13 (alleging both claims); *Carrillo v. Boise Tire Co.*, 274 P.3d 1256, 1261 (Idaho 2012) (same); *Stoddart v. Pocatello Sch. Dist.*, 239 P.3d 784, 787 (Idaho 2010) (same); *Brooks v. Logan*, 944 P.2d 709, 709 (Idaho 1997) (same); *Bingham v. Franklin Cnty.*, 796 P.2d 527, 529 (Idaho 1990) (same); *Pierson v. Brooks*, 768 P.2d 792, 794, 800 (Idaho Ct. App. 1989) (same). Further, the Idaho Supreme Court in *Horner v. Sani-Top, Inc.*,

---

expenses incurred prior to the decedent's death; (3) the reasonable value to the plaintiff of the loss of the decedent's services, training, comfort, and society; and (4) the plaintiff's loss of financial support from the decedent."

[6]     Plaintiffs rely on *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 775 P.2d 640 (Idaho 1989), and *Brown v. Matthews Mortuary*, 801 P.2d 37 (Idaho 1990). Neither case, however, stands for the proposition that an heir of a decedent may assert both a wrongful death claim and a claim for negligent infliction of emotional distress. *See Czaplicki*, 775 P.2d at 646 (addressing only negligent infliction of emotional distress claim); *Brown*, 801 P.2d at 39 (addressing intentional infliction of emotional distress for loss of decedent's remains).

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 24**

141 P.3d 1099 (Idaho 2006), considered both whether the cap on noneconomic damages applied to wrongful death damages and whether sufficient evidence supported an award of damages for emotional distress. *Id.* at 1103, 1106-07. Notably, there was no discussion in *Horner* that a plaintiff could not recover under both claims. Based on this caselaw, the Court rejects Defendants' argument that Plaintiffs cannot assert both a claim for wrongful death and a claim for negligent infliction of emotional distress. Accordingly, the Court denies Defendants' summary judgment motion on Plaintiffs' negligent infliction of emotional distress claim.

### E.    Remaining Issues

Because the Court does not dismiss Plaintiffs' negligent infliction of emotional distress claim, it does not need to address their arguments that § 5-311 is unconstitutional and that the damage limitation in IDJI 9.05 is "irrational" (Dkt. 58 at 14-15). Further, the Court declines to address the parties' dispute about RWA's post-remedial actions under Rule 407 of the Federal Rules of Evidence (Dkt. 35-1 at 14). Resolution of that evidentiary issue it not necessary to resolve the summary judgment issues. Finally, the Court declines to rule on whether the cap on noneconomic damages under Idaho Code § 6-1603 applies. Plaintiffs allege Siewert was reckless and submit Grill's report opining that he was reckless (Dkt. 59 at 37). Accordingly, whether he was reckless is a factual question for trial. Until a jury concludes Siewert was reckless and awards damages exceeding the cap, the issue of whether the cap violates the Equal Protection Clause is not ripe.

**ORDER**

**IT IS ORDERED that:**

1.    Plaintiffs' Joint Motion for Partial Summary Judgment (Dkt. 35) is **GRANTED** in part and **DENIED** in part:

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 25**

a. The Court grants Plaintiffs' summary judgment motion seeking a ruling that Defendants are jointly and severally liable under Idaho Code § 6-803(5);

b. The Court grants Plaintiffs' summary judgment motion on Defendants' Sixth affirmative defense regarding nonparty fault as to the Idaho Transportation Department;

c. The Court grants Plaintiffs' summary judgment motion on Defendants' Fourth affirmative defense that Martindale was an intervening, superseding cause;

d. The Court denies Plaintiffs' summary judgment motion on their theories of negligence per se; and

e. The Court denies Plaintiffs' summary judgment motion on Defendant's affirmative defense of comparative fault.

2. Defendants' Motion for Summary Judgment (Dkt. 56) is **GRANTED** in part and **DENIED** in part:

a. The Court grants Defendants' summary judgment motion on Plaintiffs' claims of negligent supervision and entrustment against Western Express;

b. The Court denies Defendants' summary judgment motion on Plaintiffs' claim of negligent infliction of emotional distress; and

c. The Court denies Defendants' summary judgment motion on Plaintiffs' negligence claim.

DATED: July 31, 2026

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT- 26**